Our next case for today is Ortiz-Santiago v. Barr. Mr. Cassingham. Good morning, Your Honors. Ross Cassingham for the petitioner. May it please the Court, discussing three topics. First, that this case must be reversed and remanded on the jurisdictional issue because the BIA below relied exclusively on Bermuda's quota, which is a deeply flawed decision. Can I stop you right there? I am not convinced that this is a jurisdictional issue, and that could have tremendous consequences for the nature of your argument, because the Supreme a long time ago, between jurisdictional issues on the one hand and claims processing rules on the other hand. Claims processing rules are important, and they need to be followed if somebody makes a complaint, but they do not affect the Court's power. It's usually a jurisdictional point if it moves something from one layer of a court system to another, or from the executive branch into the courts, such as, say, the timely filing of a petition for review. But moving from DHS over into EOIR strikes me as more claims processing, and here's why I think it's important. The government says, oh my goodness, if this is jurisdictional, then we have years' worth of millions of cases that are going to be processing. Only those people who preserve the claim get the benefit of it. You've raised this, so your client would, but there are vast numbers of old cases in which nobody has made this argument. I would say a few things. One, that's not an argument that the agency has made, and so that would... But it may behoove you to think of it, since they certainly have made the horrific floodgates argument. They have. The other thing that I would argue is that a lot of those cases involved a limitation on one of the parties. For example, in, I believe it was Arbaugh, there was the limitation in question required that the defendant employ, I believe it was 15 or more employees, and so it didn't actually involve the Court's authority to conduct... But the cases dealing with the time for appeal, Bowles against Russell, other cases have said that it's jurisdictional on the civil side because it rests on the statute, but it's a claims processing rule on the criminal side because it doesn't rest on the statute. So we regularly ask the government, do you want to rest on your right to object? And they say whatever they want to say. Sometimes yes, sometimes no. So you're right, there are different lines. But I think it's an important point because the floodgates argument is a serious one. Everybody seemed to have thought that this regulation that you interestingly point out is based on the pre-Ira-Ira version of the law, maybe applies only to those cases. Mm-hmm. I agree, and I appreciate the problem that this does create, as you say, opening the floodgates. I would point out that Congress didn't provide an exception in the INA for, unless it's too much of a problem, and the Supreme Court in Pereira expressly rejected administrative hardship as a reason for going around the statute. And ultimately, we can't promote mass agency disregard of the statute, and that is, getting into my second point, that is basically what we had here. There was a system in place that allowed and enabled people to apply with INA 239. I stopped using that system. We don't know why they stopped. It's a little mystifying, yeah. I am not aware. I'm not a mind reader. I have observed that by not including the time and place information, that does maximize the potential for people to lose it, not show up, and maximizes the number of absentee deportations. That is speculative on my part, though. So the agency actually created this problem, and moreover, also created the size of the problem. Had the agency included time and place information on 50% of NTAs issued in the last year, the problem would only be 50% of the size. So on some level, given that the agency created the problem and then made the problem effectively as large as possible, this court really shouldn't be shielding it from the negative consequences of that decision. How do you get around the Supreme Court's language that the holding in Pereira was narrow, which they said a couple times and made clear they were only addressing the question of whether the stop time rule is triggered by the failure to include that? Our position is that the Supreme Court actually explained what made the decision narrow, and what makes it narrow is that it applies only to the time and place information, as opposed to all the other information required under the statute. I believe it's page 2113 of that decision. The court mentions that the initial briefing, or the initial question, was for the omission of any of the information. But when they talk about narrow, they talk about it in terms of the only question that they're answering, which is the stop time question. Well, that would not be my reading. My reading of it is that their narrowness is that they are leaving open the possibility that omitting some of the other information may not make an NTA invalid. And if they intended for the ruling, the requiring of the information and the notice of removal, if they intended that for jurisdictional purposes, how did they have jurisdiction to decide Pereira in the first place? Why would they have jurisdiction to decide Pereira if not having the date and time takes away jurisdiction? The government has made this point. They decide Pereira, then they send it back for more proceedings, but presumably they must have thought that there was jurisdiction to conduct those proceedings. There have been multiple cases recently, I believe, in which the Supreme Court, with respect especially to the cases that you previously brought up, Judge, with the drive-by rulings regarding jurisdiction, basically the court's saying that just because we don't reverse it for jurisdiction, that should not be taken to imply that we do have jurisdiction. But it's a sending it back for additional matters, not just... Right. So it's another signal that it could be claim processing, because if it's claim processing, they can overlook a misstep in their discretion and still have the ruling that they do. Again, I believe that it's... I do not think that the court sending it back should be taken to mean that the court necessarily thought that they do or do not have jurisdiction. There's nothing to indicate that that question was even necessarily raised to the court, and so implying that it's making a decision on an argument that might not have even been raised seems tenuous to me. Can I ask you about the government's reliance on the Sixth Circuit's recent decision? Sure. I'll tell you what's on my mind. You can just react to it. One of the things the Sixth Circuit said, see whether you think this makes sense or not, is that the notice to appear, the use of that language in the regulation, use of that term in the regulation, is entirely different than the exact same language noticed to appear in the statute in 1229A1. In other words, I read this as suggesting the Sixth Circuit was saying, no, no, no, when the words notice to appear appear in the regulations, that's not at all what is being referred to in the statute. The notice to appear in the regulations is entirely different. Well, I would say two things. One... Is that right? I would say no, because the regulations in the statute have to be read together and harmonized as much as possible. And so, to say that the use of notice to appear in the statute means one thing, but use of notice to appear in the regulation that should be read with the statute and should be read to support the statute, but is still completely different, that just becomes... It's got to be the same term, because the statutory provision being referenced is 1229A1, which by its terms involves the initiation of removal proceedings. Correct, yes. It's got to be the same term. And I see I am running out of time. That's all right. If Judge Scudder has another question... No, I'm good, thanks. All right, I'm going to give you a minute to rebut, so why don't you stop for now, and then you can finish off. Ms. D'Amanio. Damiano, sorry. That's right. May it please the Court, Lisa Damiano on behalf of the Attorney General. Good afternoon. I'm going to turn right to the issue of the immigration court's jurisdiction vesting. The key point here is that the petitioner's entire argument is based on the mistaken premise that the statute 1229, parentheses, A, controls jurisdiction. But as the courts, like the Ninth Circuit and Kerengethi, have said, the statute does not reference jurisdiction anywhere. Well, can I just say, the service of the notice to appear initiates the proceedings before the immigration authorities. I'm trying not to use the word jurisdiction, but it certainly is an initiating document, and that is why I think it's probably a claims processing document. And you've got both 8 CFR, Section 1239.1, you've got Section 239 of the Act, you've got a lot there. And what concerns me about your position is, I feel like you changed the word dissenting, after Justice Alito's name in pariah, to opinion of the court. I don't know how thorough it is, but it seems to me it surely deals with time and place information. And, you know, if the agency hasn't been doing it right, then it needs to pay the consequence, at least if a petitioner has properly raised the point. Understood, Your Honor. If you look at the statute 1229, parentheses, A, it says, in removal proceedings, written notice shall be provided to the non-citizen, and lists a bunch of requirements. That statute is a statute of what is required for notice and service to the non-citizen. It is not a statute that explains what constitutes jurisdiction before the agency. But you haven't properly initiated a case until an appropriate notice, under the post-Ira-Ira regime, until a proper notice to appear has been sent. And indeed, you have clues from Congress, which did create a tool that was supposed to facilitate properly filling out this form, that the agency, for its own reasons, decided it was going to stop using. I can't think of anything more important for somebody than to be told, certainly with service of process in court, if we didn't bother to tell you by when you need to answer, and which court you're going to, we wouldn't think that was a proper notice. And I don't see how this is a proper notice under the Supreme Court's decision in Pereira. Well, as this panel stated earlier, Pereira deals with the intersection, the narrow question of the intersection between two statutes. Well, does it, though? The second paragraph of the majority opinion, the first sentence, states that the narrow question in this case lies at the intersection of these two statutes. But part of it is, you know, that isn't even just, it's only about time. The agency seems to want at least two bites of the apple. You'll dribble out one part of the notice, and one communication, then six months later, you know, you'll dribble out another part of the notice, and another communication, and for all I know, maybe that's just place, you're not telling time yet, you dribble it out in a third. Congress doesn't seem to have created that system. And if it didn't, then the agency shouldn't try to use it. Well, Congress didn't indicate in the statute when jurisdiction vests. That's why the regulation... That's the initiating document. Yes, but in order for it to vest jurisdiction, the regulation states it must be filed with the immigration court. That's the event that triggers jurisdiction. It, though, is the same, right? It's the notice to appear in both instances. And the difficulty that I have, if you just step back here, and you say there's a term in the U.S. Code called notice to appear, and it's defined by statute in a way that has certain requirements and attributes with it, including date, time, etc. And if you just, you want to call those attributes collectively the statutory floor, okay? You have an agency that is implementing it, albeit for a different purpose, that is erasing parts of the statutory attributes in a way that's taking it below the floor of the definition. I mean, that just seems very odd to me. Well, Your Honor, what we've argued is that the notice to appear referred to in the regulations is still the same notice to appear that is in the statute. It's just that for jurisdiction to vest, the time and place isn't required. But where do you get that from? You made that out of whole cloth. You're saying that the, as Judge Scudder was saying, that the attributes turn on and turn off, depending on whether it's in the statute or whether you've decided to erase a few of them under the regulation. I see no clue that Congress, if you want to think in Chevron-type terms, intended to delegate to the EOIR or any other office the ability to delete part of the statutory requirements. Well, Your Honor, it's our... You could see if it's a statutory floor, you could see as a matter of administrative implementation, you're going to require, you know, other details around notice. But how do you go below the floor? Well, Your Honor, we are arguing that they're not going below the floor for jurisdictional purposes. What do you mean by jurisdictional purposes? Maybe you need to explain that, because I've... Notice to appear initiates the proceeding in which whatever the allegations are going to be resolved. And you seem to think that you can initiate the proceeding with something called a notice to appear that fails to comply with the criteria for a notice to appear in the statute. Well, that's, you know, one of our alternative arguments is that the statute doesn't say that all of the information has to be contained within one written... Do you think every statute needs to say that? Here's the list of things it has. And by the way, we really mean it, all of these things have to be here. Well, no, that it could be given to the non-citizen in more than one piece of paper. So that's where our argument comes in. But that's where Justice Alito argued for that, and the Supreme Court said no. Right. This Court's decision in Dababna, which predates... Which predates Peraira. We're supposed to follow the Supreme Court, not they-us, sadly enough. Yes, Your Honor, but as we've argued, Peraira is distinguishable from the jurisdictional issue. It only dealt with whether that particular non-citizen was eligible for cancellation of removal. Here we have a non-citizen arguing that jurisdiction never vested in the first place. When we know that he received notice of his hearings, he attended all of his hearings, he was represented by counsel... Would you say the same thing if in a district... Of course, there's waiver possibilities. There might be more to adjudicate, but if somebody is served with a deficient set of service of process and never shows up in a court, then they aren't bound by an ultimate default judgment because they were never properly notified. Yes. So there are serious consequences. Exactly, and that's separate from jurisdiction. That's a requirement of notice to the non-citizen. What's this thing called? Notice to appear. In this immigration system, which is a complicated one at best, it starts out with a notice to appear that complies with the statute. If it hasn't properly started out, then why doesn't the time just keep on ticking during which the person is in the United States? The issue here is not whether the time keeps ticking, because that was the issue in Pereira. Here we have a non-citizen that already met the continuous physical presence requirement. He doesn't have to worry about that, but what we're saying is that the regulations define when jurisdiction vests, which is separate. But why not the statute? What gives you the authority to define the jurisdiction of an administrative agency as opposed to procedural characteristics? I'm not defining it. I'm simply pointing out that the statute... Yes, you are. You're saying that it's entirely a matter of regulation, jurisdiction. Yes, and that it's not mentioned in the statute, and we have to turn to the regulations to see when does jurisdiction vest, what is required, and there's a series of things that are required under the regulations for jurisdiction to vest. Before you sit down, do you want to say anything about 1239.1, which explicitly cross-references the statutory notice? Yes, I would, Your Honor. It cross-references 1229 only to the extent of service. 1239. 1239, but it references 1229 only to the extent... It's the statute 1229, only to the extent of service. As I keep saying, the 1229 parentheses A deals with what is required for written notice to the non-citizen, and the CFR 1239.1 references the statute in regards to service of the NTA, not in jurisdictional terms. Okay. Thank you. All right, thank you very much. As I said, I'll give you a minute, Mr. Kessinger, if you want it. Two quick points I'd like to make. One, opposing counsel is too quick to dismiss the statute in this regard. We would say that FDA v. Brown and Williamson Tobacco Corporation is actually a pretty instructive case. There, the FDA claimed jurisdiction to regulate tobacco products, and the court said that Congress had explicitly prohibited that exercise of jurisdiction based entirely on the statutory context without anything in the language, and that statutory context is exactly what opposing counsel has left out. And with respect to 1239.1 being about service, 1239.1 also provides the specific rule for beginning a removal proceeding. It says every removal proceeding shall commence with a service of the NTA. So it's not just about service, it's also about commencement, it's also about jurisdiction. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.